2025R00605/VDR/CSS

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Matthew J. Skahill |
| | : | |
| v. | : | Mag. No. 25-4068 |
| | : | |
| MICHAEL PATRICK TAKACS, JR. | : | **CRIMINAL COMPLAINT** |

I, Breyana Mason, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

### SEE ATTACHMENT A

I further state that I am a Special Agent with Federal Bureau of Investigation, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached page and made a part hereof.

*Breyana Mason*
_____
Breyana Mason, Special Agent
Federal Bureau of Investigation

Special Agent Breyana Mason attested to this Affidavit by telephone pursuant to Federal Rule of Criminal Procedure 4.1(b)(2)(A) on August 6, 2025, in the District of New Jersey.

_____
Honorable Matthew J. Skahill
United States Magistrate Judge

## ATTACHMENT A

## COUNT 1

**(Transportation of Explosive to Intimidate and Damage Vehicle)**

On or about July 26, 2025, in Burlington County, in the District of New Jersey, and elsewhere, the defendant,

## MICHAEL PATRICK TAKACS, JR.,

did knowingly transport, in interstate commerce, an explosive with the knowledge and intent that it would be used to intimidate any individual and used unlawfully to damage and destroy any building, vehicle, and real and personal property.

In violation of Title 18, United States Code, Section 844(d).

## COUNT 2

### (Unlawful Transportation of Explosives)

On or about July 26, 2025, in Burlington County, in the District of New Jersey, and elsewhere, the defendant,

**MICHAEL PATRICK TAKACS, JR.,**

not being a licensee or permittee under the provisions of Chapter 40 of Title 18 of the United States Code, did knowingly transport and caused to be transported, explosive materials.

In violation of Title 18, United States Code, Sections 842(a)(3)(A) and 844(a).

## COUNT 3

### (Unlawful Possession of Firearm)

On or about July 26, 2025, in Burlington County, in the District of New Jersey, and elsewhere, the defendant,

**MICHAEL PATRICK TAKACS, JR.,**

knowingly possessed a firearm, as defined in Title 26, United States Code, Section 5845(a)(8) and Title 26, United States Code, Section 5845(f)(1), made in violation of Title 26, United States Code, Section 5822.

In violation of Title 26, United States Code, Sections 5861(c) and 5871.

## COUNT 4

### (Unlawful Possession of Firearm)

On or about July 26, 2025, in Burlington County, in the District of New Jersey, and elsewhere, the defendant,

### MICHAEL PATRICK TAKACS, JR.,

knowingly possessed a firearm, as defined in Title 26, United States Code, Section 5845(a)(8) and Title 26, United States Code, Section 5845(f)(1), which was not registered to him in the National Firearms Registration and Transfer Record.

In violation of Title 26, United States Code, Sections 5861(d) and 5871.

## ATTACHMENT B

I, Breyana Mason, am a Special Agent with the Federal Bureau of Investigation. The information contained in the Complaint is based upon my personal knowledge, as well as information obtained from other sources, including: (a) statements made or reported by various witnesses with knowledge of relevant facts; (b) my review of publicly available information; and (c) my review of evidence, including video surveillance, documents and physical evidence. Because this complaint is being submitted for a limited purpose, I have not set forth every fact that I know concerning this investigation. Where the contents of documents and the actions and statements of others are reported, they are reported in substance and in part, except where otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1.      At all times relevant to this Complaint, the defendant, MICHAEL PATRICK TAKACS, JR. ("TAKACS"), was a resident of Warminster, Pennsylvania.

2.      On or about July 26, 2025, at approximately 2:42 a.m., according to surveillance video footage reviewed by law enforcement, an explosive device detonated in the vicinity of a silver Ford Explorer owned by Victim-1 and parked in Victim-1's driveway located in or near Delran, New Jersey. The explosion caused a debris field extending out approximately 100 feet in diameter, with various nails and bolts lodged in both the body of the Ford Explorer and in adjacent residential homes.

3.      Approximately two minutes prior to the explosion, surveillance video reviewed by law enforcement showed a dark-colored SUV, later identified as a Jeep Renegade, park directly across the street from Victim-1's residence and an individual exit the front driver's side door of the SUV carrying a black object. The individual approached the vicinity of the driver's side door of Victim-1's Ford Explorer and then quickly left the vicinity of the Ford Explorer empty handed, returning to the SUV and departing the area.

4.      Shortly thereafter, surveillance video footage showed what appeared to be the same dark-colored Jeep Renegade pass Victim-1's residence at a high rate of speed, followed immediately by a large explosion that engulfed the vicinity of the Ford Explorer in or near Victim-1's driveway. Law enforcement believes that the individual driving the Jeep Renegade remotely detonated an explosive device that he had placed near the Ford Explorer while passing Victim-1's residence.

5.      Based on interviews conducted after the explosion, law enforcement learned that Victim-1 previously worked with TAKACS and was one of TAKACS's supervisors at his place of employment. In or around May 2025, TAKACS was terminated from his position at his place of employment.

6.    Law enforcement then began surveilling TAKACS and TAKACS's residence located in or near Warminster, Pennsylvania. During that surveillance, law enforcement observed a Jeep Renegade parked in the vicinity of TAKACS's driveway, the same make and model of the SUV seen on surveillance footage outside of Victim-1's residence.

7.    Following the explosion, law enforcement recovered, among other things, the following items: (a) one damaged 9-volt battery, (b) two damaged antenna parts, and (c) one damaged remote fire pyrotechnic device.

    a.  Law enforcement then learned that on or about June 28, 2025, an online account registered to "Michael Takacs" purchased two remote fireworks igniter systems ("Igniter System-1" and "Igniter System-2"), which, according to federal bomb and explosive experts, can be used to remotely detonate an explosive device. Igniter System-1 was delivered to TAKACS's residence located in or near Warminster, Pennsylvania on or about July 5, 2025. Igniter System-2 was delivered to TAKACS's residence located in or near Warminster, Pennsylvania on or about July 11, 2025.

    b.  Law enforcement then reviewed online stock photographs of the Igniter System-1 and the Igniter System-2 as depicted on the website used to purchase the two items. A comparison of the stock photographs of Igniter System-2 with the remote fire pyrotechnic device recovered from the scene of the explosion revealed that both items were similar in appearance, from the same wording on the front of the igniter—"Power," "Test," "Status," and "Fire"—to the same brand of battery and use of an antenna.

    c.  On or about August 1, 2025, law enforcement conducted a search of trash that had been placed in front of TAKACS's residence. The trash included a box with a shipping label addressed to TAKACS, inside of which contained a small white box that appeared to be for the Igniter System-2, which had been purchased online by TAKACS.

8.    On or about August 1, 2025, law enforcement executed search warrants of TAKACS's person and TAKACS's residence. During a preliminary review of TAKACS's cellular device that was seized pursuant to those search warrants, law enforcement observed a screenshot taken on or about June 4, 2025, of an online map depicting Victim-1's residence, as well as text messages between TAKACS and another individual discussing the purchase of a license plate flipper (a device that assists drivers in obscuring or concealing license plates at the press

of a button). Law enforcement also recovered instructions for the Igniter System-1 and the Igniter System-2.

9.     TAKACS did not hold a license or permit to import, manufacture, or deal in explosives from the Attorney General.

10.     TAKACS did not apply to make the explosive with the Secretary of the United States Treasury.

11.     The explosive was not registered to TAKACS in the National Firearms Registration and Transfer Record.